Court, your Honor. It's Kirk Kennedy for the appellate, Jonathan Carter, counsel. Your Honors, I want to explain why we're here with all these complaints. I'm sure it was obvious, you know, what was going on in 2002 that I was filing two separate lawsuits. The first one was against the State of Nevada defendants only. The second one we filed later in 2002 included the Apelli fact and the Apelli-Clark County. Both of those were subsequently dismissed. And I want to explain for the record why that occurred. At the time in 2002, I was under the impression that my client would be getting off his probation. But unfortunately, that did not happen until early, approximately February 2003. He had concerns, valid concerns, that if we went forward with the lawsuit at that time and actually served it on the defendants, yeah, he may face some form of retaliation. The whole lawsuit itself, at least part of it anyway, concerned how he was being treated under his court ordered terms and conditions of probation in Nevada. And that was the We were on a third complaint in this case. The central argument that Judge Dawson made in the district court in Las Vegas concerning the Apelli fact was that there was a privity, a relationship between fact and the State of Nevada that supported the impact of the two-dismissal rule under FRCP 41A1, that fact should get that benefit as well because it had a contract. If fact alone had a contract that I don't think I would be here today on this argument. But as I cited in the brief and it's in the record, there was an independent contractor agreement between the State of Nevada, the Department of Parole and Probation, and fact to provide psychosexual counseling services for defendants who are convicted of sex-based crimes and had to go under court ordered therapy. That's basically what they provided. The contract itself, I think, does establish, and clearly, there is a contract. There is a privity relationship. But when you get to paragraph 14, paragraph 14 minimizes substantially the nature of that contract, the contractual relationship between the State of Nevada and fact. And indeed, in explicit language, which has been cited, and I'm sure you reviewed, it states that there is no agency relationship. Essentially, there is no viability whatsoever between the State of Nevada and fact in this independent contractor agreement. So I have a situation where there is a contract, there is a basis for what Judge Dawson said, but is that sufficient that fact should get the benefit or the res judicata effect of the two-dismissal rule? We, of course, argue it should not because of that disclaimer language. If paragraph 14 is not there, then I don't have this argument. The entire argument hinges on your interpretation of paragraph 14 and that disclaimer language. The language seems clear. The question is how far do you want to extend it? Do you think this is your strongest argument on this with fact? I think that's the whole basis of how Judge Dawson ruled, by finding the privity relationship. So if the Court finds that the privity relationship is substantial, then I lose on that point. But if the Court finds that that paragraph 14, that disclaimer, substantially limits the privity relationship, then I think it's an open question for your decision as to whether is that sufficient that fact should get the benefit of the two-dismissal rule. I mean, I conceded to the dismissal of the State of Nevada defendants because it was clear. There was absolutely no defense to it, and they're out of it. And I conceded to that in the district court. But fact, we believe and contend on our side that they're very much still alive and well in this case, and the lawsuit should be allowed to go forward on the State law claims and the Section 1983 claim. If, in fact, we agree with you on the independent contractor nature of fact, how does that impact your necessary allegation under 1983 that fact is a State actor? This is that fine line. Am I talking out of both sides of my mouth here? I know Judge Dawson addressed that as well in a footnote in the order. The contract does create a relationship. Fact, on its own, as an independent contractor, is providing counseling services for defendants compelled by the State of Nevada to go through psychological counseling, psychosexual counseling. It's our contention that because there was a contract, they are acting with State authorization. There's no doubt that fact is doing this to be paid by the State. They're being authorized by the State to do this. And that creates the, are they operating under color of law, the law test under Section 1983. But, as well, I do have State law claims, which the Court exercised penitent jurisdiction on and dismissed, but of negligence, negligent supervision that were pled against fact. There was, the fact that there was a contractual, the contractual relationship between fact and the State creates the basis of the Section 1983 liability. If there's no paragraph 14, then I lose. But with paragraph 14, I believe that there's an exemption here. There's something the Court can look at to decide that fact should not get the benefit of the restitute of conduct effect of the two-dismissal rule. So that's basically our position as it concerns fact. It is a fine line. I candidly admit that. But it's a walking in line that's only supported by how you interpret that paragraph 14. As to Clark County, Clark County was brought into this case. It's clear Clark County was not part of the supervision of Jonathan Carter while he was on probation. They, of course, did the prosecution through the District Attorney's Office. What we had alleged is that after this case, I was actually on the criminal case. I did the whole case and started it. So are you, are you moving now to the withholding of evidence? Yes. Yes. Yes, Your Honor. All right. Well, I think you have a decent argument. Well, I'm listening to your argument. It's tricky. As to the argument you're about to make, I have trouble with that one from, on several levels. And, you know, there's several things in terms of, I don't know how you can assert the statute of limitations can be told based on your assertion that the alleged withheld information regarding your client's sister and her mental and emotional problems was not discovered until well after his conviction, when the record indicates that your client filed a plea with the alleged victim in April of 2000, prior to his plea of guilty. And then, you know, I've got, I've got problems with that. And then also, I think that in U.S. v. Ruiz, the Supreme Court concluded that the Constitution does not require the government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. And you've got the plea here. So I don't see how, you know, those are problematic to me for you. Mr. Carter was convicted in 2000. We did a plea negotiation. I negotiated with the DA's office. He was sentenced, got the probationary terms. Approximately 2001, within the time frame of 01, we learned for the first time that his sister, Elizabeth Carter, had certain mental health issues going on. But why would he have made a motion for a psychological examination prior to that, and then you claim that you had no notice of that? Well, certainly we did. You were just doing it to harass her? No, not at all. Not at all. That wasn't the focus. It was actually an attempt to try to obtain leverage with the DA's office to negotiate a deal. And ultimately, we did do that deal. If I recall — Well, I guess that sounds like to harass her. Well, it's a defense tactic. I mean, you know, but I'm saying what, if you're not doing it to harass her, it certainly puts on notice that you had indication of psychological problems. But then, even if I give you that, if I give you that argument, the fact that, you know, how do you state a constitutional violation when, when you've entered a plea, you don't have — you know, what's your constitutional violation under 1983 for not getting discovery? Well, Nevada has a state law, NRS — I think it's under Chapter 176 — concerning the disclosure of — the mandatory disclosure in Nevada in state cases. And the DA's office does have an obligation to disclose all relevant and material evidence, exculpatory or not, to the other side, to the defense. But what do you have to show under 1983? A violation of a state statute? I don't think so. Well, it's a due process violation as to whether or not, Mr. Carter, we have this information. If I recall correctly, and I'm glad you brought the issue of that motion, we've filed that. I don't believe that the examination actually went through, because that was the same timeframe that we were able to then get a negotiation with the district attorney's office. Even if there was information you didn't know about, shouldn't you have filed a motion to withdraw the guilty plea rather than do a collateral attack under 1983? Post-conviction remedies are certainly available to challenge what had happened. And I have a criminal defense practice, and I've done those. In this case, we decided to go with a civil remedy. Certainly, a post-conviction process, doing a habeas action in state court, would have been one way to go. Well, it seems to me, on the East Coast, where I come from, we would have expected a post-conviction remedy to withdraw the plea rather than a civil suit based on what had happened in connection with the plea. Well, there is an unknown quantity here on my side. An unknown variable is whether or not this information, would it have helped us if we had it or not. In other words, we don't know. There is an unknown variable here as to whether having this information about Elizabeth would have helped us in this case. And I think it's important to note that in this case, we did not want to take back his guilty plea when, you know, he was faced with life's checks. And it was a pretty good deal. Yeah, it was a very – actually, it was a great deal. It worked out. In fact, in the end – He did a fine job in getting that. It was a very good deal. So – but the family had had these concerns, and that was one of the reasons we brought forth with the suit as to whether this information was withheld from the grand jury, which indicted my client, and certainly  But the other thing that I want to note is that this case is a case that I've been in the county's position. There's a lot of case law on it. The only way I'm attacking Clark County, the DA's office, is that in Embler v. Procman – I actually have other appeals here pending in the Ninth Circuit with a similar argument – there is language in there saying that if the prosecutor acts in the investigation phase, does something that attacks or is in derogation of someone's constitutional rights, it's a qualified immunity issue, not absolute immunity. And I've cited the Embler v. Procman case. I know it wasn't as well cited in the brief as I should have, but there's U.S. Supreme Court case law supporting that contention that a prosecutor – generally, I know there are enormous public policy considerations to protect prosecutors from lawsuits. They can't be worried about if they're going to get sued if they go after some guy, and there's legitimate concern for that. But in the early stages of a case, when a prosecutor is working to build up the police on the case, that's the – we would contend the investigation phase of the case. And in the investigation phase, it's not absolute. It's no different than the immunity that a police officer has, is qualified immunity. Okay. So you're saying this was investigation and it wasn't discovery and an integral part of the prosecution. It was investigation because it was at the timeframe of going to the grand jury and developing their case, that this was information that was developed during that timeframe. And so we would contend that that was during the investigation phase, not after the charges had gone forward after the grand jury and we've gone to arraignments and we're preparing for trial and filing motions, then it's absolute. Then I've got nothing – I have nothing I can argue on that. But if it's in those early stages, there is that narrowly crafted exception which apparently remains valid under the Brockman case from the U.S. Supreme Court. So that's where – that's the avenue that I'm going on that. So you're over your time. So thank you very much. Thank you so much. Yeah. May it please the Court. I'm Margaret Foley for Clark County. Counsel for FACT and I propose to divide our time into five minutes each unless the Court has a different timeframe in mind. As Mr. Carter stated, his allegation against Clark County is extremely limited. It is also internally inconsistent and fails to state a constitutional claim, as Judge Callahan noted. He claims that the prosecutor may, and he leaves it very conditional, may have failed to disclose information about his sister to him, information that impacts her credibility. However, as the Court noted, he did ask for the hearing about her psychological state, asked for psychological examination. In any case – Also his sister. Also his sister. Which is not – it's not – which is, I think, distinguishable from an alleged victim that you don't – a stranger victim as opposed to that you wouldn't know anything about. I mean that – I would agree. Unfortunately, we all know too much about people in our families sometimes and we know all their warts and their issues. I heartily agree, Judge. In any case, the claims are barred by absolute prosecutorial immunity. As Judge Callahan noted, there's no constitutional right to have impeachment evidence when a guilty – in a guilty plea case. And this Court has noted in a couple of different cases that withholding of evidence from the defense, the prosecutor's absolutely immune even if the failure to disclose amounts to a Brady violation. Importantly here, Mr. Carter does not allege there was a Brady violation. He said that he considered post-conviction remedies but didn't know if he could prevail on them because there wasn't – it didn't rise to the level of a constitutional violation. And that also defeats his 1983 claim. To the extent that the prosecutor was evaluating the testimony of a witness, this Court decided in Roe v. City and County of San Francisco that that is protected by absolute immunity. The judgment, the professional evaluation of a witness by a prosecutor, even if that judgment is harsh or unfair or clouded by personal animus. The – and the district court also properly dismissed Clark County from the action based on the bar of HEC v. Humphreys. As Mr. Carter's counsel stated, he considered doing post-conviction relief but decided not to. As Judge Roth noted, that is the proper avenue here. He claims in his brief that he's not challenging his conviction, but yet the only allegation against Clark County is that the prosecutor may have withheld some evidence and that that evidence severely impacted his defense of his case. If he's not challenging his conviction, it's hard to see what he could possibly challenge. The – We have a recent case out of our court, which I don't agree with but I'm bound by, and it's called Goldstein v. City of Long Beach. Yes. And that – wherein the – it was found not to be, you know, integral to the impeachment on snitches and how you handle snitches in an office of the district attorney's office. Does that case in any way impact absolute immunity in this case? I don't believe it does because, first of all, there was the guilty plea, and then second of all, because there – Why would that make a difference in this case? Under the Reese case. No, I mean, the idea of Goldstein – Yes. Is that errors occurred in the administrative – in the administration of the office and the cataloging of evidence and maintaining of databases. Okay. So – I'm familiar with that case. The issue in Goldstein wasn't necessarily what happened later. It was that there was tainted evidence that came in as a result of the administrative structure of the office and not the prosecutorial structure. So I think the argument here would be along the lines that Plaintiff urges, which is that all this occurred in the investigative phase, and therefore you're not entitled to absolute immunity. Yes. How do you respond to that? Yes. Even under a qualified immunity analysis, if that applies – Right. But, no, we're just talking about absolute immunity. Why would absolute – if Plaintiff is right that all this occurred in the investigative phase, why are you entitled to the benefit of absolute immunity? Because the duty to disclose doesn't arise until preparation for trial. Well, Goldstein sort of undermines that in a sense. And also the idea in Goldstein is that maybe the prosecutor is immune, but that doesn't help the county because the county administers the system. Okay. To the extent that Goldstein applies, the county would rely on its alternative argument that the challenge is barred by HEC-V Humphreys. Okay. You're into the – Thank you. Unless there are further questions. Okay. Good morning, Your Honors. Cethal Tadjura here on behalf of Family and Child Treatment of Southern Nevada, also known as FACT. There are three reasons why the lower court's decision should be affirmed and that FACT should remain dismissed in this lawsuit. The first being the two-dismissal rule pursuant to FRC. Let me just ask you this. This was a 12B6 motion, correct? Correct. And wasn't it inappropriate for the district court to resolve the privity issue on a Rule 12B6 motion since the court relied on FACT's contract with the state, which was not attached to any pleading? Well, often the court can look outside of the pleadings and treat it like a motion for summary judgment. Well, but it didn't here, right? You know, so. And if it does treat it like a motion for summary judgment, doesn't that open up the opportunity to the opponent to present their version of what is involved? Absolutely. He did have an opportunity to present their version of what was involved. And then to do discovery or to say we need to do discovery, was that presented? It was not presented by the other side. He had the opportunity to put it in his opposition, but didn't. Now, with regard to the two-dismissal rule. But you only get to the two-dismissal rule if you have privity, right? Excuse me? If you have privity, that's the only way you get it. Correct. However, as the lower court decided, the contract isn't the only reason that privity applies. It's not dispositive of the privity. First of all, with regard to paragraph 14, it specifically actually only pertains to the relationship that FACT and the state defendants would have to third-party claimants, not to each other. What is paragraph 14? Because it seems that paragraph 14 seems to cement the independent nature of the relationship between the state and FACT. That's only as it pertains to third-party claimants, not to each other. And specifically, this Court has defined that. How does that make any difference, given that we're dealing with a third-party claimant here? Well, what the Court is supposed to be looking at is the relationship between the two parties, not necessarily the fact that someone has brought a claim against one of the parties, but at least in terms of determining whether or not it's the same claim. And this Court has defined... So, in other words, what benefit does that have? If we interpret it the way you say, what meaning does the paragraph have? Paragraph has in terms of determining whether or not vicarious liability would apply or whether there would be a duty to indemnify. But it doesn't, it isn't dispositive of whether or not they're substantially similar or substantially same, as this Court has defined as 41A would, that would be the standard for 41A to apply to a defendant who wasn't named in the previously voluntarily dismissed lawsuit. But in determining that they – whether they are or are not the same, what would be significant? The amount of control? Well, as this Court has defined, same claims to be the aggregate of operative facts. And if you look at the facts that were alleged in all three of the complaints, they're similar – they're very similar. In fact, they argue plaintiffs' main arguments are that he was improperly charged, that the probation was – was instated, and that – and he implies that the acts of the defendants caused the probation to be revoked. See? But at the same time, if it's – if fact is making the determination of treatment without the county participating in any way, that does not create a privity between fact and the county as to the nature of the treatment, does it? No. It's not necessarily a – and it's not necessarily a privity between the facts. Is this the basis of what he's – Mr. Carter's complaining about? Well, maybe I misunderstood. It's not a privity that we're supposed to look at between the facts and county. It's the facts and the previously dismissed state defendants. And we have to look at the aggregate of the operative facts. And those facts and the relationship of the claims that plaintiffs brought in all three of these lawsuits, they're similar. The only thing that has changed is the identity of facts being included in the last two lawsuits. Right. But if that argument's true, then you can't bring in any co-defendant or potentially liable party later. That doesn't create privity. Well, the other alternative that plaintiffs had was to – But then if we follow your argument, then any contractor with a state government enjoys the state's defenses. That is true. Even if the state is sued. Well, I wouldn't – That's not the law. I wouldn't say any state contractor. I think you have to look at the contracts in particular. But with regard to this case, the fact is that there is the privity relationship in terms of the allegations within the law. Well, under this circuit's precedent in Lake at Las Vegas, which asks if the two parties are substantially the same for Rule 41A1 purposes, how can fact be substantially the same as the state defendants when fact's contract with the state provides for indemnification? Well, the fact is that that only pertains to the relationship between third-party claimants. It doesn't define the relationship between the two when we're looking at privity between the two defendants that were previously dismissed. But the whole point of the clause is so that there's no vicarious liability running between the parties, right? True. So doesn't that defeat privity in itself? I mean, essentially you're saying, no, we're not to be treated as, the intent is that we don't want any vicarious liability running one way or the other. But that's the essence of privity in this context is that you have, you consider them the same entity. Well, with regard to plaintiff's alternative options, what he could have done is move to amend his complaint, not voluntary dismiss it. But in this case, because that privity exists, the privity or the relationship that the fact is that FACT is performing the duty that the State of Nevada has given it to it to provide sexual offender treatment. And that, because of the allocation of the duty, despite of the fact that they won't indemnify or that there is paragraph 14 that defines the relationship as to third-party claimants, the relationship between the two is substantially similar. So you're conceding that FACT is a State actor? Excuse me? Are you conceding that FACT is a State actor? Well, it, there's no way to reconcile that FACT is a State actor and that it's not, plaintiff's argument is that. No, no, I said are you conceding that FACT is a State actor? If, for purposes of the, for the 1983 claim? Yes. It is a State actor in terms of it has, it's carrying on the State's functions. And with that, one of the other arguments that were raised in our motion to submit is that it's an immune contractor, pursuant to the Nevada revised statutes 41.037 that states that immune contractors with the State of Nevada are provided immunity. And that should apply to FACT in this case. And that was raised in, before the lower court as well. Okay. Any further questions? Thank you. Thank you, Your Honor. And you've used up your time, so the case will be submitted. Thank you. Thank you. The next case on the oral argument calendar is Stiles v. Estrue. All counsel here?
judges: Thomas, Callahan, Roth